## JEREMIAH TYLER *vs.* JOHN SMITH & others.

When an officer's return of an execution states that he levied it on the land of the judgment debtor, for whom he appointed an appraiser, after giving due notice in writing to said debtor, " who neglected and refused to choose for himself," the return must be taken to be true, in an action brought by the judgment creditor, to recover damages for a trespass on the land ; and the defendant, in such action, cannot impugn the levy on the ground that the officer did not, after taking the land, allow the judgment debtor a reasonable time to appoint an appraiser, as required by the Rev. Sts. *c.* 73, § 22 ; although all the proceedings of the officer, on the execution, are returned with the date of a single day.

A disseizee, having a right of entry, and entering peaceably on land, no one being thereon, and taking possession under his title, thereby acquires the right to maintain an action of trespass against the disseizor and others, for a subsequent breach and entry.

TRESPASS for breach and entry of the plaintiff's close, and carrying therefrom a quantity of hay.    The defendants sever

ally pleaded the general issue, and filed a specification of defence, denying that the plaintiff had title to the close, or that ne was in possession thereof at the time of the alleged trespass, and averring that he was then disseized thereof. Trial in the court of common pleas, before *Williams*, C. J. who reported the case as follows:

The plaintiff, to prove his title, offered in evidence an execution, issued on a judgment recovered by him against Ephraim Peabody and others, and a return of the levy of the same, on the 21st of April 1831, upon the land described in the present writ and declaration, as the property of said Peabody, who was then in possession thereof.

The officer's return on this execution was thus: "Essex, ss. April 21, 1831. Pursuant to the annexed execution, I have caused three disinterested freeholders of the said county to be sworn, as will be seen by the certificate of the justice, on the annexed execution, viz. Daniel Huse, chosen by the within named Jeremiah Tyler, the creditor; Stephen Barker, 2d was chosen by myself; and the third, Joseph A. Bodwell, was chosen and appointed by me for the within named Ephraim Peabody, the debtor, who was duly notified by me in writing, but neglected and refused to choose for himself; who afterwards viewed the land described by the appraisers on the annexed execution, shown to them, by the said Jeremiah Tyler, as the estate of the within named Ephraim Peabody; and I have extended the annexed execution on said described land," &c.

The defendants objected, that said execution and return were not sufficient in law to pass the said Peabody's title to the plaintiff; but the objection was overruled, and they were admitted in evidence.

Evidence was then introduced, tending to prove that, from the date of said levy to the death of said Peabody in 1837, he continued in the actual occupation of said land; that in the spring of 1838, John Smith, one of the defendants, entered into possession of the farm formerly occupied by said Peabody, of which the *locus in quo*, before and at the time of said levy, was parcel; that the plaintiff, in the summer of 1838, sold the grass then

growing on the *locus,* and that it was cut and carried away without interruption ; that said Smith cuᴸ the grass in 1839, and in 1840 ploughed and planted a large part of the *locus ;* that ne sowed the same in 1841, and in 1842 began to mow it.

Jacob Tyler, a witness called by the plaintiff, testified that, about the 1st of June 1842, he called on said John Smith, at the plaintiff's request, and gave him notice that the plaintiff " would prosecute him, if he did any thing with the land."

Another witness, also called by the plaintiff, testified that, in the summer of 1842, he went to said land with the plaintiff, and saw persons carrying away hay ; that the defendant John Smith was one of them, but that he did not know the others. Being called again, this witness testified that, when he and the plaintiff arrived at the land, " the grass had been mowed the same day ; " that he thought no one was then on the land ; that the plaintiff went upon it and put up the bars, and forbade the defendants and others to take them down, or to enter upon the land ; but that the said Smith, or some of the defendants, took down the bars, and entered and carried away the hay. On cross-examination, this witness said he could not swear positively that no one of the defendants was on the land when the plaintiff entered, but that he was " very certain no one was there."

There was testimony that all the defendants, except Wesley Smith and Aaron Gilcreast, assisted in mowing, before the plaintiff went to the land. There was no positive evidence that any of the defendants, except John Smith, Walter Smith and Aaron Gilcreast, assisted in carrying away the hay, after the plaintiff went to the land ; but there was some circumstantial evidence against Charles F. Smith.

Upon this evidence, the defendants objected that the plaintifl was disseized of the *locus in quo,* and had not possession thereof, so as to maintain this action. This objection was overruled ; and the court instructed the jury, that if they were satisfied upon the evidence, that the plaintiff, before the said hay was taken from said land, peaceably entered thereon, no person ʰeing then on said land, and took possession thereof under hiʳ

said title, and the defendants afterwards, without his consent, and against his prohibition, entered upon the land, and carried away the hay, they thereby became trespassers; and the plaintiff was entitled to a verdict.

The jury found a verdict for the plaintiff against all the defendants, except Wesley Smith, as to whom the plaintiff discontinued, before the case was committed to the jury. The defendants alleged exceptions to the ruling of the court.

*Hazen,* for the defendants. The facts show, not only that the plaintiff was disseized, but also that he knew that he was ousted of seizin. Com. Dig. Seisin, F. 1. 9 Vin. Ab. Disseisin, C. 7, 31, 41, 67. And it is submitted, that since the provision in Rev. Sts. *c.* 101, §§ 1, 2, for the recovery of estates of freehold by a writ of entry, in which the demandant must count on a disseizin by the tenant, there is no other lawful way for a disseizee to recover a possession that will entitle him to maintain trespass. The Rev. Sts. *c.* 104, § 3, prohibit a party from obtaining restitution, by the process of forcible entry, of any land of which one, or his ancestor or grantor, has been in peaceable possession for three years. If John Smith had not been in possession for three years, perhaps the plaintiff might have had a right to the process given by that chapter. By § 7 of *c.* 101, one who ousts the owner may be treated as a disseizor, for the purpose of trying the right in a writ of entry, although he claims an estate less than a freehold. This section, therefore, makes the action of trespass a needless remedy, in a case like that at bar. By § 31 of *c.* 101, an action of trespass for mesne profits and damages lies against any person except the tenant in the writ of entry. This section proceeds on the ground that a demandant shall not enter and bring trespass. By Rev. Sts. *c.* 119, § 8, an entry on land does not give possession, for the purposes of that chapter, unless open and peaceable possession is continued for a year.

The levy of the execution was defective. By the Rev. Sts. *c.* 73, § 22, the officer who levies an execution on land is required, "after taking the land," to give notice thereof to the debtor, and to "allow him a reasonable time to appoint an

appraiser." The return of the execution, in this case, shows that a reasonable time was not allowed to the debtor. The and was taken, the notice given to the debtor, an appraiser appointed for him, and the levy completed, on the same day. The notice was in writing ; but it does not appear whether it was given to the debtor in person, or was left at his house. It is doubtful, on the return, whether he had any actual notice. See *Bott* v. *Burnell,* 11 Mass. 165.

N. *J. Lord,* for the plaintiff. The levy of the execution gave seizin to the plaintiff. *Gore* v. *Brazier,* 3 Mass. 523. And the facts reported do not show a disseizin. Peabody " continued in the occupation," but not in the possession, of the land, as against the plaintiff; certainly not in the adverse possession. But if the plaintiff was disseized, the case of *Putney* v. *Dresser,* 2 Met. 583, is decisive that he may maintain trespass after an entry.

If there were a defect in the plaintiff's levy, the defendants, being mere trespassers, and claiming no title to the land through Peabody or any one else, could not take advantage of it. But that levy is not defective. The return shows that Peabody had due notice to appoint an appraiser, and that he refused. The court cannot go behind that return ; and the date of the *levy* (April 21st) is not proof that the *notice* to Peabody was on that day. The whole proceedings of the officer are stated, in the return, as of the day on which the levy was completed.

WILDE, J. This case depends on the question whether the plaintiff, at the time of the trespass alleged in his declaration, was in the lawful possession of the *locus in quo.*

It is objected by the defendants' counsel, that the plaintiff's title, under the levy of his execution against Peabody and others, is not valid, the same not having been levied according to law. The objection is, that a reasonable time was not allowed to the execution debtor to appoint one of the appraisers. But this objection is not supported by the officer's return of the execution. He certifies that he duly notified the execution debtor to choose one of the appraisers for himself, and that he neglected and refused so to do. This certificate must be taken to be true, and it is wholly inconsistent with the objection alleged.

The execution debtor not only " neglected " but " refused " to avail himself of his legal privilege.

It is also objected that the plaintiff, at the time of the alleged trespass, was disseized by John Smith, the principal defendant. But, admitting that the previous acts of said Smith amounted to a disseizin, it was proved that the plaintiff had regained the actual seizin of the *locus*, before the commission of the trespass. The jury were instructed, on this point, that if they were satisfied, upon the evidence, that the plaintiff, before the said hay was taken from said land, peaceably entered thereon, no person being then on said land, and took possession thereof under his said title ; and the defendants afterwards, without his consent, and against his prohibition, entered on the land, and carried away the hay ; they were trespassers, and the plaintiff was entitled to a verdict. And we are of opinion that these instructions to the jury were perfectly correct. If the plaintiff, having the legal title, entered on the *locus*, and took possession, no one then being on the land, he unquestionably thereby acquired the actual possession.

It has been argued that this case is within the Rev. Sts. *c.* 119, § 8. But if that section is in any case a bar to an action of trespass, committed by a disseizor, after an entry by a disseizee, it is no bar to this action. The plaintiff does not rely on a mere entry on the land, John Smith being in possession ; but that he took actual possession, peaceably, no one being in possession at the time. And we cannot doubt that he thereby acquired the legal possession of the close, and that this action is well maintained. The entry and possession intended by § 8, of *c.* 119, must be understood as a mere formal entry and momentary possession, and it is so explained by the commissioners, in their note on this section. This section, therefore, has no application to the present action ; and there can be no doubt that, by the principles of the common law, the owner of land may lawfully enter upon it, and take possession of it, no one being then thereon, and that such an entry and possession will avoid all disseizins and unlawful estates, and will restore the right owner to the same situation as if he had not been disseized.          *Exceptions overruled.*